Turley, J.
delivered the opinion of the court.
The prisoners, Patsy Troxdale, William E. Upton, and Nicholas Stephens, stand convicted of the crime of 'murder in the first degree, by the judgment of the Circuit Court of the county of Overton, and to reverse which, they have prosecuted their writ of error to this court. The murder, for the commission of which these persons have been condemned, can scarcely be paralleled in the annals of crime for savage and remorseless cruelty, for wanton and unprovoked malignity, for cool and deliberate malice, and a thirst for blood, to have been looked for only in beasts of prey, and with all, attended with circumstances so strange and mysterious, so unaccountable, according to any ordinary principle of human action, and involving in the guilt of its perpetration, a person so connected with the victims, that it is horrible to think of, and the mind starts appalled from its contemplation.
A family of seven persons, a father, mother, and five children have been most brutally murdered and burned in the house in which they lived, and under such circumstances as renders it impossible to designate the guilty *418 perpetrator, if it were not Patsy Troxdale, one of the prisoners at the bar, aided perhaps by .one or both the others. But then Patsy Troxdale is the daughter of the father and mother, the sister of the five children, who have been thus inhumanly slaughtered; and the imagination seeks in vain for any adequate cause for so unnatural and dreadful a crime, parricide and fratricide combined — the utter destruction of the prisoner’s whole family, embracing the hoary heads of her parents and the immature and infantine heads of her brothers and sisters — age and infancy in one fell swoop, and yet there is no apparent motive for all this, save a slight misunderstanding and difficulty with her father, the result perhaps of his dissatisfaction with her lewd and immoral life. There is no evidence whatever of any dissatisfaction with her mother, or want of affection for her brothers and sisters; and yet she stands convicted by a jury of her country as their murderess ; not as a murderess, excited by strong and irrepressible anger, committing the crime in the fury of passion, and in .revenge for injury or insult sustained, not for gain, but from some demoniac feeling alike unexplainable and unaccountable. She must have stolen upon them in the night time when they were reposing in sleep, and unconscious of her approach, and with an axe have beaten out their brains deliberately one by one, seven blows in succession, beginning perhaps with her father, and ending with her little brother, scarcely two years old. Is it possible that human depravity can have perpetrated such a crime ? I am constrained to say "that much of this testimony tends to such a result. If she were not a party to this crime, then were neither of her co-defendants, Upton and Stephens, for they could have had no motive to commit the offence, save through her *419 solicitations and influence. They had no angry or malicious feelings to avenge, nothing to gain by its perpetration. There is no evidence that there were malignant enemies of the murdered family, who could have committed the crime, and they were poor, and lived retired in the mountains of Overton county, and there was nothing to be gained by their assassination. It is not possible, from the circumstances detailed, that the old man could himself have murdered the whole family, and then burnt the house and himself in it. This has been argued, but there are things, in connection with the event, which make it at least highly improbable, if not impossible. The whole transaction is horrible and mysterious, and no case has ever been presented to my consideration which has involved me in more perplexity, or about which I have had more difficulty in arriving at any satisfactory conclusion upon the facts.
The case being, in my humble opinion, thus involved, it becomes highly necessary that we should scrutinize, with great particularity, the proceedings in the court below, and require the utmost strictness in the observance of all those forms and requisites prescribed by the law for the main-tainanee of the purity of trial and the safety of the accused, /it is a case in which the most calm and deliberate investigation and examination should be demanded on the part of the court and jury; one in which a verdict and judgment of conviction ought not to be sustained, if the jury, who try the case, are not above all exceptions, and the testimony all of such a character as not to make false impressions or induce false inductions. It is a case, above all others that we have seen, which requires the coolest and most enlightened and most impartial jurors for its trial, which demands of the judge the most rigid *420 scrutiny and investigation of the legality of the testimony on the part of the court, and the clearest exposition of its nature and tendency. It is a case in which neither this court nor the community would be satisfied to execute the prisoners, nor any one of them, unless it were apparent that these things all concurred in the trial in the court below.
We cannot say that they did. We do not think that William. Shelton, one of the jurors who tried the case, was bonus, probus et legalis homo, omni exceptione major as the law requires that he should have been; he had, in _qur judgment, prejudged the case.
The affidavit of Andrew Swallows shows that, some months before the session of the court, at which the case was tried, the juror told him, that from the best information he could get, he was of the opinion that the defendants ought all to be hung, for the offence wherewith they were charged.
The affidavit of Benjamin Belyew shows that the same juror, three or four months before the trial, told him that the defendants ought to or would be punished for the QÍfence from what he was informed.
If these two witnesses speak the truth, and there is no reason to doubt them, then the juror, William Shelton, was not an impartial juror, but must have gone upon the trial of the case with a preconceived opinion of the guilt of the prisoners, and he must have gone on the trial with bad motives, for he was examined upon the voir dire with a view to his challenge propter affectum, and denied that he had formed such an opinion. In the case of McLain vs. The State, 10 Yerger, 241, it is said by the court: “ The trial by jury has always in England and in this country been considered of such vital importance *421 to the security of the life, liberty, and property of the citizen, that great care has been taken to preserve it unimpaired. That the accused may have the full benefit of a judgment by his peers it is absolutely necessary, first, that the minds of the jurors should not have prejudged his case; second, that no impression should be made to operate on them except what is derived from the testimony given in the court, and third, that they should continue impartial and unbiased. These objects can only be attained by selecting those who have no preconceived opinions as to the guilt or innocence of the prisoner, and by not permitting .them, after they have been sworn, to separate from each other and mingle with the rest of the crowd.”
A new trial then ought, in our opinion, to be granted in this case for this reason. The principles of this decision are not at war with the case of Howerton vs. The State, Meigs’ Rep., 262. In that case the affidavit of one witness showed that one of the jurors; shortly before the trial declared to him that the prisoner was guilty of the charge and ought to be convicted and sent to the Penitentiary, and the question was whether a new trial ought to be granted on the ground of this affidavit, and it was held that it ought not. The judge who delivered the opinion in that case says: — “ Without insisting, as might well be done, that the oath of the juror upon the trial, quoad affectum, before the court, would be an equipoise as against the oath contained in the affidavit — we think that if there had been other affidavits of the same tenor they ought not to countervail the oath of a juror. The loose impressions and conversations of a juror, founded upon rumor, would not if disclosed by him or others to the court, have the effect to set him aside' as incompetent, and might *422 therefore, be readily forgotten, or even perhaps properly pretermitted by the juror when upon oath, as not deserving to be regarded as the formation or expression of opinions and convictions. Nothing would be more calculated to impair the just administration of the laws, than to set aside verdicts upon such grounds. When a case shall ai'ise, of a juror, hostile to the defendant and maliciously seeking, with a view to his injury, to pass upon his trial, by denying upon ‘oath his opinions and convictions, it will present a case, which, as it will differ from the present, may receive from us a different determination.”
Without the slightest disposition to weaken the authority of this case, (for we hold it to be sound law) we may be permitted to observe, that it has gone as far as the law upon this point can be carried. It is seen that its argument rests upon the propositions,—
1. That the oath of the juror is not to be countervailed by'the oath of the affidavit.
2. That loose impressions and convictions of a juror, founded upon rumor, will not, if disclosed by him or others to the court, have the effect to set him aside as incompetent.
The opinion, expressed by the juror then, was considered to be a loose impression, founded upon rumor, which, inasmuch as it would not, if disclosed to the court, have disqualified him as a juror, so it shall not, when disclosed upon affidavit after trial, constitute a good ground for a new trial. Such is not the case under consideration.
The expression of the opinion of the guilt of the prisoners by the juror, is not a loose expression of opinion founded on rumor, but a deliberate and calm expression of opinion, founded upon the best information he could get; he said so himself. Upon the best information he could get; what does this mean? Common rumor? *423 Surely not. It means that be was desirous of having information upon the subject, and that he put himself to trouble to obtain it; for he had formed his opinion upon the best information he could get. If he were seeking after information, of course he would go to those who knew the facts of the case, — which he might easily do, being a citizen of the county where the crime was perpetrated. If he got his information from the witnesses he prejudged the case from the proof and not from rumor. He was then an incompetent juror, and would have been rejected had the fact been known to the court.
The fact of this pre-judgment of the juror is established by the oaths of two witnesses, and the case, therefore, is not as the case of Howerton, oath against oath, and is in fact in our opinion the very case reserved by the judge in that case, for future decision, viz, of a juror denying upon oath his opinions and convictions with a view to injure the prisoners by passing upon their trial — for we can conceive no other motive for such a denial.
In relation to the evidence and charge of the judge thereon, there is but little to be said. We are not prepared to say that any illegal evidence was received, or that the charge of the judge is, strictly speaking, in any thing erroneous. But we have a strong impression that the jury may have been misled in relation to the testimony of Christina Hensly, and have been induced to give undue weight to it, by reason of what was said to them in relation to other testimony confirmatory of her statements. Christina Hensly is a witness wholly unworthy of belief, as is amply shown, not only by her manner of deposing, but by the testimony of other witnesses who discredit her. She proves a confession, by the prisoner Patsy Troxdale, equivalent to a direct acknowledgment *424 of her guilt. No weight whatever ought, under the Circumstances of the case, to have been given to her uncorroborated evidence of this fact of confession. And so it was considered, for upon the subject the court said to the jury: “If you regard the witness as not being of herself entitled to credit, yet if her evidence, in so many material points, (if any) is so corroborated and confirmed by other reliable and credible evidence, either positive or circumstantial, as to inspire a conviction in your minds that her evidence is true, independent of any faith in.her statements alone, then it would be competent for you to give her credit.”
Now though this charge is legally correct, yet in deliberating upon this subject, the jury may have been misled, by not having been informed what kind of testimony would be corroborative of the testimony of Christina Hensly, proving a confession of guilt on the part of Patsy Troxdale, and may have supposed that any testimony, going to establish her guilt, outside of her confession, would be a corroboration of the testimony of Christina Hensly as to the confession. Now this would be a great error. For though confession establishes guilt, the corpus delicti being proven, and, therefore, corroborates other proof of such guilt; yet a proof or proofs of guilt, by no manner of means can establish the fact of a confession of guilt, or corroborate any evidence of such confession. For a person may be proven most clearly to be guilty, and yet never confess. There is no such connection between guilt and confession, as to constitute proof of the one, any corroborative evidence of the truth of a statement that the other was made. Evidence that would be corroborative of the truth of such statement, must have some relation and .connection with, the making the confession, and must be *425 of such a character as could raise a presumption that such confession had been made.
We say that from the neglect of the judge in drawing this distinction, the jury may have supposed that other credible proof of guilt was corroborative evidence of the truth of the witness, and have been thereby induced to believe that the confession was made as detailed by her; the consequence of which necessarily would have been a conviction. We do not know that we would have reversed upon this ground solely, but it strengthens our dissatisfaction with the result of this trial, and makes us the more anxious that this case should again be submitted to a jury, under the hope that further light may be shed upon this terrible transaction, and a result arrived at more satisfactory than the present, not only to ourselves but to the community.
Let the judgment be reversed, and the case remanded for a new trial.
Green, J.
delivered the following:
In the opinion of my brother Turley, in this case, a doubt seems to be indicated, whether the defendant, Patsy Troxdale, is guilty of the murder charged in the indictment.
The. expression of that doubt, constrains me to say, that I do not coneur in the expressions contained in the preliminary observations of the opinion.
Upon the facts in this record, I should feel ho disposition to disturb the verdict as to the defendant Troxdale. But I concur in awarding a new trial upon the ground, that Shelton was not an impartial juror. I also think, that the judge was not sufficiently clear and explicit in stating *426 the law as to what would be a corroboration of Christina Hensley’s evidence.
I, therefore, think there should be a new trial.